UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 3:03CR183(CFD) |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KARL GATES | : | November 12, 2004 |

## GOVERNMENT'S PROPOSED FINDINGS RE: SENTENCING

_____On June 30, 2003, the defendant KARL GATES pleaded guilty to
an information, charging him with one count of theft of
government property in violation of 18 U.S.C. § 641.  On November
9, 2004, the Court addressed various sentencing matters.  At the
conclusion of the proceeding, the Court invited counsel to file
any supplemental sentencing materials on or before November 12,
2004 in advance of the defendant's sentencing scheduled for
November 15, 2004.  Specifically, the Court sought the submission
of proposed findings relative to the sentencing issues before the
Court.  The government's proposed findings are set forth below.

## I. PROPOSED FINDINGS AS TO APPLICATION OF U.S.S.G. § 2B1.1.

### Amount of the Loss

    1.  The parties reported to the Court that there is no
longer a dispute as to the amount of the loss resulting from the
offense of conviction and any relevant conduct.  Specifically,
the parties agree that the loss amount is $35,003.12.  Under
section 2B1.1(b)(1) of the Federal Sentencing Guidelines
("U.S.S.G." or "Guidelines"), the agreed upon loss triggers a

six-level increase in the base offense level.

2.    Apart from the fact that the parties appear to agree on
the applicable loss amount, an adequate basis in fact exists to
support this figure.  Specifically, the Court adopts the
presentence report's ("PSR") findings that the loss amount is
$35,003.12.

### More than Minimal Planning

3.    The defendant has objected to any enhancement under
section 2B1.1(b)(4)(A) for "more than minimal planning".  The
government maintains that the enhancement applies.  Having
reviewed the parties submissions and heard oral argument on the
matter and adopting the factual findings of the PSR, the Court
finds as follows.

4.    Section 2B1.1(b)(4) provides that "[i]f the offense
involved more than minimal planning, increase by 2 levels."
U.S.S.G. § 2B1.1(b)(4).  Section 1B1.1(f), in turn, defines "more
than minimal planning" as meaning "more planning than is typical
for commission of the offense in simple form."  U.S.S.G. §
1B1.1(f).  Section 1B1.1(f) continues:

> More than minimal planning is deemed present in any case
> involving *repeated acts over a period of time, unless it is
> clear that each instance was purely opportune.*
> Consequently, this adjustment will apply especially
> frequently in property offenses....  In a theft, going to a
> secluded area of a store to conceal the stolen item in one's
> pocket would not alone constitute more than minimal
> planning.  *However, repeated instances of such thefts on
> several occasions would constitute more than minimal*

*planning.*

Id. (emphasis added); see also United States v. Walsh, 119 F.3d
115, 118 (2d Cir. 1997) (series of false and misleading
statements considered relevant conduct and indicative of
"repeated acts" triggering application of "more than minimal
planning" enhancement).

5.  In the present case, the facts set forth in the
presentence report decidedly reveal that the defendant engaged in
repeated acts involving false statements and the unlawful receipt
of federal funds over a period of several years.  For example,
during the period from 1996 through 2000, the defendant made
numerous false statements as to his marital status.  At various
times, the defendant stated that he had been separated from his
wife since 1995 or that he had never been married at all.  In
fact, the defendant has been married to his current wife since
1994.  Moreover, on January 10, 2001, the defendant conceded to
law enforcement authorities that he had never been separated from
his wife for more than two weeks.  Had the defendant truthfully
described his marital status he would not have been eligible for
SSI benefits during the period from October 1994 through December
2000. (PSR ¶¶ 14-21.)

6.  The pattern of false statements precipitated the
defendant's desired result of continuing a stream of SSI benefits
to which he was otherwise not entitled.  In view of the

defendant's "repeated acts over a period of time", the two-level enhancement under section 2B1.1(b)(4)(A) is plainly applicable.

## Calculation under U.S.S.G. § 2B1.1

7.    In view of the foregoing and applying the version of the Guidelines in effect as of November 1, 2000, the Court finds that the defendant's base offense level is 12 calculated as follows:

        U.S.S.G. § 2B1.1(a)..............4

        U.S.S.G. § 2B1.1(b)(1)..........+6

        U.S.S.G. § 2B1.1(b)(4)(A).......+4

        Chapter II Offense Level.......12

8.    The Court notes that as to the issue of calculating loss under section 2B1.1 of the Guidelines, the defendant has indicated that he wishes to reserve any claims arising from the decision in Blakely v. Washington, 124 S. Ct. 2431 (2004). Specifically, the defendant has preserved the right to claim that the issue of loss must be submitted to a jury and proved beyond a reasonable doubt.

## II. PROPOSED FINDINGS REGARDING APPLICATION OF U.S.S.G. § 3E1.1

9.    The PSR initially did not recommend that the Court reduce the defendant's offense level by two levels pursuant to U.S.S.G. § 3E1.1.  The government similarly took the position that a reduction in the offense level was unwarranted given the defendant's apparent failure to comply with the conditions of his pre-sentence release.  However, the government has modified its

stance in view of the defendant's willingness to acknowledge the full extent of the loss as referenced earlier and the defendant's full compliance with the conditions of his bond since February 2004. The Court is satisfied that the defendant has accepted responsibility for his offense. A two-level reduction in the base offense level is thus warranted, bringing the defendant's adjusted offense level to ten.

**III.  PROPOSED FINDINGS REGARDING DEFENDANT'S CRIMINAL HISTORY**

10. There is no dispute that the defendant's criminal record and corresponding criminal history score under Chapter IV of the Guidelines results in a Criminal History Category IV. However, the defendant has requested a horizontal departure, claiming that Category IV overstates the seriousness of the defendant's past  criminal behavior.

11. Section 4A1.3 provides that in cases where a defendant's criminal history does not "adequately reflect the seriousness" of a defendant's criminal record, a horizontal departure may be appropriate. Departures may be granted where the Guidelines analysis results in an understatement or an overstatement of a defendant's criminal history. An example of overstated criminal history is set forth in the commentary to section 4A1.3 as follows:

> An example might include the case of a defendant with **two minor misdemeanor convictions** close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period.

-5-

U.S.S.G. § 4A1.3, Commentary (emphasis added).

12.  The defendant's criminal history does not overstate the seriousness of his criminal record.  This is not a case involving two remote misdemeanor convictions as contemplated in the commentary to the Guidelines.  See U.S.S.G. § 4A1.3, Commentary. Rather, the defendant has engaged in a nearly unbroken pattern of misdemeanor offenses for more than two decades that continued during and after the commission of the offense of conviction. (PSR ¶¶ 40-58.)  The defendant has at least 15 convictions, amassing a total of 15 criminal history points.  But for the operation of U.S.S.G. § 4A1.1(c), which caps the defendant's criminal history points at four for offenses not triggering at least a 60-day jail sentence, the defendant's criminal history would place him in Category VI.

13.  Furthermore, while the defendant's prior convictions are for misdemeanor offenses, the crimes are not in each case petty.  The defendant's convictions evince a propensity to steal, carry firearms and other weapons, and disregard hunting regulations.  In other words, the defendant's criminal record portrays a person who engaged in criminal activity that is harmful and dangerous to others.

14.  The basis of the defendant's departure argument centers around his mental health and the extent to which his impulsivity disorder may have contributed to his commission of the prior

offenses.  The defendant has failed to meet his burden of proving that any mental health conditions under which he may have labored contributed to the commission of each of the convictions.  It is true that some of the crimes committed by the defendant appear to reflect a degree of impulsivity.  However, the report of Dr. Varun Choudhary only opines that such conduct is consistent with the defendant's more recently diagnosed mental health condition.

15.  Moreover, there are several offenses that are similar to the instant offense in that they do not appear to be impulse-type crimes.  For example, the defendant was convicted of home improvement fraud, when he submitted a false lab report to a homeowner stating that his soil was toxic. (PSR ¶ 47.)  The defendant was also convicted of making a false statement about a claimed theft of his car. (PSR ¶ 54.)  The defendant was twice convicted of reckless endangerment when he shot a cross-bow into his neighbor's residence and shot a wild turkey on residential property without permission. (PSR ¶¶ 55 and 56.)  There is no evidence that any mental illness contributed to the defendant's commission of these offenses.

16.  Even if the Court had the discretion to depart under U.S.S.G. § 4A1.3, the Court would not exercise its discretion to do so.  Ultimately, the question is the likelihood of recidivism.  In this regard the defendant's track record speaks for itself.  The number of convictions and their recency, the fact that the

defendant committed a crime after he pleaded guilty to the
instant offense (and has since been convicted) (PSR ¶ 58), and
the fact that the defendant committed the instant offense while
under the care of Holly Goss (see Report of Dr. Varun Choudhary
("Choudhary Report") p. 5.), all suggest a likelihood of
recidivism that is adequately reflected in a Category IV criminal
history.

**IV.  PROPOSED FINDINGS RE DOWNWARD DEPARTURE UNDER CHAPTER FIVE**

17.  Apart from requesting a horizontal departure on the
basis of claimed overstated criminal history, the defendant has
moved for a downward departure pursuant to section 5K2.13 and
section 5K2.0.  A downward departure is not warranted under
either provision.

### U.S.S.G. § 5K2.13

18.  Section 5H1.3 of the Guidelines provides that "[m]ental
and emotional conditions are not ordinarily relevant in
determining whether a sentence should be outside the applicable
guideline range, except as provided in Chapter Five, Part K,
Subpart 2."  U.S.S.G. § 5H1.3.  Section 5K2.13, in turn,
authorizes a district court to grant a downward departure on the
ground of a defendant's "significantly reduced mental capacity."
Application Note 1 to section 5K2.13 defines "significantly
reduced mental capacity" to mean that the defendant "has
significantly impaired ability to (A) understand the wrongfulness

-8-

of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful." U.S.S.G. § 5K2.13, Application Note 1.

19. Even where a defendant establishes "significantly reduced mental capacity," he further bears the burden to show "'a causal link between that reduced capacity and the commission of the charged offense.'" United States v. Silleg, 311 F.3d 557, 563 (2d Cir. 2002) (quoting United States v. Prescott, 920 F.2d 139, 146 (2d Cir. 1990)); United States v. Ventrilla, 233 F.3d 166, 169 (2d Cir. 2000) (per curiam) (same).

20. The government does not dispute the diagnosis of Dr. Choudhary in June 2004, namely that "Mr. Gates presents with signs and symptoms consistent with a diagnosis of Bipolar I disorder as well as antisocial personality traits." (Choudhary Report 13.) The question for the Court is whether the defendant's mental health condition resulted in a significantly reduced mental capacity that contributed to the commission of the offense.

21. Dr. Choudhary's diagnosis does not establish an impaired ability to understand the wrongfulness of his conduct or to control behavior that the defendant knows is wrongful. See U.S.S.G. § 5K2.13, Application Note 1 (defining "significantly reduced mental capacity). The Choudhary Report suggests that the defendant was aware of the wrongfulness of his conduct. By his

-9-

own admission, the defendant often committed crimes because he believed he could outsmart the police, not because he didn't appreciate the wrongfulness of his actions. (Choudhary Report 14.)

22.  While the Choudhary Report alludes to the defendant having periods of impulsivity, which arguably bears some relationship to a loss of control, the report does not show any connection between his condition and the offense of conviction in this case.  Nor does the report offer any concrete conclusions as to the state of the defendant's mental health during the period of the offense.

23.  Moreover, the offense of conviction is not a crime of impulse.  Rather the defendant's conduct is more consistent with a calculated effort to an end-result, i.e., the receipt of money to which the defendant was not entitled.  The defendant effectuated this purpose by making multiple false statements to the Social Security Administration over a period of years.

24.  As for the opinion of Holly Goss, the Court is not satisfied that her reports adequately demonstrate a significantly reduced mental capacity at the time the defendant committed the offense.  In fact, during period of the offense, specifically, in the Fall of 2000, the defendant was in therapy with Ms. Goss, who then diagnosed the defendant.  According to the Choudhary Report which summarizes Ms. Goss' diagnosis, in approximately the Fall

of 2000, the defendant "exhibited mild depression, irritable and anxious mood, with pressured speech and loosening of associations." (Choudhary Report at 5.)  Ms. Goss did not report a bi-polar disorder until her subsequent treatment of the defendant nearly three years later.  Hence, the record is at best unclear as to whether the defendant labored under a significantly reduced mental capacity at the time of the offense.

25.  In short, the record does not support the granting of a downward departure under section 5K2.13.  The record does not adequately prove that the offense of conviction was the result of "an impaired ability either to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows was wrongful."  U.S.S.G. § 5K2.13, Application Note 1 (2000 ed.).

## U.S.S.G. § 5K2.0

26.  Citing charitable deeds and viewing the totality of the circumstances, the defendant further requests a downward departure under section 5K2.0 of the Guidelines.

27.  "Where an unusual constellation of factors exists that removes any sentencing from the `heartland cases, district courts are obligated to consider departures even though no one factor, standing alone, might justify an upward or downward departure." United States v. Leung, 360 F.3d 62, 72-73 (2d Cir. 2004); United States v. Rioux, 97 F.3d 648, 663 (2d Cir. 1996) ("In

extraordinary cases, however, the district court may downwardly depart when a number of factors that, when considered individually, would not permit a downward departure, combine to create a situation that 'differs significantly from the 'heartland' cases covered by the guidelines.' ") (quoting U.S.S.G. § 5K2.0, cmt.).  For a departure to be warranted, however, the circumstances must be truly extraordinary such that it is evident that they were not adequately taken into consideration by the Sentencing Commission. U.S.S.G. § 5K2.0.

28.  The Court has reviewed the various submissions and letters filed on behalf of the defendant.  The defendant's charitable deeds are noteworthy, and he should be commended for devoting his time and energy to such worthy causes as providing food to underprivileged persons in the community.  However, the facts and circumstances of this case, whether viewed in isolation or in their totality, do not rise to the level of removing this case from the heartland of cases.  The Court thus denies the defendant's request for a downward departure.

### Assuming Valid Basis Exists for Downward Departure

29.  Even if grounds for a downward departure exist in this case, given the defendant's criminal history, the need to deter others from committing crimes of this nature, and the importance of protecting the public from a defendant who is drawn repeatedly into a variety of criminal activities, the Court in the exercise

of its discretion would not depart downward.  See 18 U.S.C. §
3553(a) (listing factors to be considered in imposing sentence).

### Conclusion

30.  Because there are no grounds for a downward departure,
the defendant's sentencing exposure under the Guidelines is in
the range of 15 to 21 months of imprisonment and $2,000 to
$20,000 in fines, corresponding with a total offense level is 10
and a Criminal History Category IV.  Restitution in the amount of
$35,003.12, a portion of which the defendant has already paid, is
further ordered, the balance of which shall be payable within 30
days.

    Respectfully submitted,

    KEVIN J. O'CONNOR
    UNITED STATES ATTORNEY

BY:  S. DAVID VATTI
   ASSISTANT UNITED STATES ATTORNEY
   FED. BAR NO. ct11957

FOR: BRIAN E. SPEARS
   ASSISTANT UNITED STATES ATTORNEYS
   FED. BAR NO. ct14240
   UNITED STATES ATTORNEY'S OFFICE
   915 Lafayette Boulevard
   Bridgeport, CT  06604
   (203)696-3000
   brian.spears@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing to be delivered on the 12th day of November 2004 to:

    Frederick Paoletti, Esq. (Via Facsimile & Regular Mail)
    Paoletti & Gusmano
    3301 Main Street
    Bridgeport, CT 06606

    Jose Cartagena (Via Hand-Delivery)
    United States Probation Officer
    915 Lafayette Blvd.
    Bridgeport, CT 06604

    Hon. Christopher F. Droney (Via Hand-Delivery)
    United States District Judge
    United States Courthouse
    450 Main Street
    Hartford, CT 06103


                                    _____
                                    S. DAVID VATTI
                                    ASSISTANT U.S. ATTORNEY
                                    For: BRIAN E. SPEARS
                                    ASSISTANT U.S. ATTORNEY